Filed 9/3/21  P. v. Gillean CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN GILLEAN,<br><br>    Defendant and Appellant. | H045860<br>(Santa Clara County<br>Super. Ct. No. C1758465) |

A jury convicted defendant of reckless driving while evading police, driving against traffic during a pursuit, and driving on a suspended license.  He argues on appeal that the trial court committed prejudicial evidentiary and instructional error related to the pursuing officer's identification of defendant, and that the prosecutor committed prejudicial misconduct in closing argument.  He also argues that his sentence for driving against traffic while evading an officer should be stayed under Penal Code section 654, and that a one-year prior prison term enhancement must be stricken in light of new sentencing laws.  We reject the arguments related to defendant's trial, but agree with his sentencing arguments.  We will modify the judgment to stay execution of sentence for driving against traffic to evade an officer, and strike the one-year enhancement.  As modified, we will affirm the judgment.

## I.  BACKGROUND

A California Highway Patrol officer was monitoring the Central Expressway carpool lane when a male driver passed him in a Honda Prelude.  The officer pulled his

motorcycle in behind the Prelude, and the driver, whom the officer later identified as defendant, failed to yield to the officer's lights and siren. Defendant then led the officer on a five- to seven-minute high-speed chase during the Silicon Valley rush hour. Defendant drove on shoulders, across multiple lanes of traffic, against traffic, at unsafe speeds, and with disregard for the safety of other drivers. Due to the danger posed by defendant's driving, the officer ended his pursuit and instead drove to the San Jose address where the car was registered to a female sharing defendant's surname. Neither the car, the registered owner, nor defendant were at the residence. The officer spoke with the property owner who related that defendant had left in the Prelude about an hour earlier. The officer returned to his office, where he viewed a DMV photo of defendant and recognized him as the driver. He also learned that defendant's driver's license was suspended.

Defendant was charged with reckless driving while evading police (Veh. Code, § 2800.2, subd. (a); count 1), driving against traffic while evading a pursuing officer (Veh. Code, § 2800.4; count 2), and misdemeanor driving on a revoked or suspended license (Veh. Code, § 14601.1, subd. (a); count 3). The information alleged defendant had served a prior prison term within the meaning of former subdivision (b) of Penal Code section 667.5.

At trial, defendant moved in limine to exclude the property owner's hearsay statement regarding his driving the car. The prosecutor explained that he was unable to locate the owner, whom he believed had passed away, and the statement was admissible for the non-hearsay purpose of the effect on the listener. The court suggested the prosecutor elicit what the officer did next "without getting into the statement." The court advised that the officer could say "that he showed up, spoke to the landlady about the car, after he spoke to the landlady, then he went to the DMV and looked up the defendant's name and then got this photograph." Consistent with that discussion, the officer testified that after terminating his pursuit, he went to the address where the car was registered,

spoke with the property owner, and developed a potential lead on defendant as a suspect. He then obtained a photo of defendant from DMV and recognized the man in the photo as the person driving the Prelude.

A jury found defendant guilty, and the trial court found true the prior prison term allegation. Defendant was sentenced to three years imprisonment, composed of concurrent two-year terms on counts 1 and 2, plus one year for the prior prison term enhancement, and to time served on the misdemeanor.

## II. DISCUSSION

### A. PROSECUTORIAL MISCONDUCT

Defendant argues the prosecutor committed prejudicial misconduct during his rebuttal argument by suggesting to the jury that he had been prevented from presenting evidence that defendant had previously driven the car because it was inadmissible propensity evidence. A prosecutor commits misconduct by using " 'deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " (*People v. Lopez* (2013) 56 Cal.4th 1028, 1072.) In closing argument, "[p]rosecuting attorneys are allowed a 'wide range of descriptive comment' and their ' " 'argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' " (*People v. Martinez* (2010) 47 Cal.4th 911, 957.)

Misconduct under state law is reviewed for a reasonable probability of a more favorable outcome to the defendant but for the misconduct. (*People v. Riggs* (2008) 44 Cal.4th 248, 298; *People v. Watson* (1956) 46 Cal.2d 818, 836.) "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Reviewing courts " ' "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Brown*

3

(2003) 31 Cal.4th 518, 553–554.) Misconduct rising to the level of federal constitutional error is reviewed for prejudice under *Chapman v. California* (1967) 386 U.S. 18. (*People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1534.) Misconduct that does not result in the denial of a defendant's specific constitutional rights "is not a constitutional violation unless the challenged action ' "so infected the trial with unfairness as to make the resulting conviction a denial of due process." ' " (*People v. Riggs*, *supra*, at p. 298.)

The prosecutor argued to the jury that the case was not "an eyewitness testimony case" but a case testing the officer's credibility. He argued the officer was alert, trained, paying attention, and viewed defendant several times, and the officer's positive identification was corroborated by evidence showing defendant shared a surname and address with the vehicle's registered owner. He also argued the fact that defendant's license was suspended at the time was motive for his conduct.

Defendant's attorney countered that the officer may have been credible, but he did not have a "super human memory" and he made a mistake. He argued that the officer's photo identification was not reliable because procedures used for civilian witness identification were not used; and in court the officer was remembering not defendant but the photo of defendant. He argued that the officer had conducted an insufficient follow-up investigation by not leaving a voice message with the registered owner, not determining whether other family members had access to the car, and not determining whether defendant had access to the car or "had ever driven this car a single time in his life." Counsel continued, "The district attorney wants you to believe that, well, [defendant] had a suspended driver's license; so he somehow has motive to take the police on a deadly high-speed chase. What I want to know is, his driver's license is suspended for traffic violations, what car is he driving? If the district attorney had evidence that [defendant] had ever been pulled over in that vehicle, had ever driven that vehicle before, you better believe that you would have heard about it, but you didn't. There's not a shred of evidence saying [defendant] ever had access to that vehicle or had

4

ever driven that vehicle a single day in his life." Counsel also pointed out that at the time of the chase defendant did not live at the address where the car was registered, and did not change his address to that of the registered owner until some nine months after the event.

In rebuttal, the prosecutor argued that there are "certain moments in our lives that just burn into our memory," that "a life-threatening event is one of those memories," that the officer, who is "trained in ways that other civilians are not" experienced one of those moments here, buttressing the reliability of his identification. "So when the defense presents to you an argument that the People didn't give you prior acts of the defendant in the car, don't be misconstrued [*sic*]. Don't be led astray, ladies and gentlemen, there is a concept in the law that's called propensity evidence. It's this idea that we are not allowed—we don't want jurors to be convicting people because they did something before, and so while I can easily point to the instruction that says—the all evidence one, that we talked about in voir dire." Defense counsel objected, to which the court responded: "Once again, the same admonition. I gave latitude to both attorneys to argue their cases as they see. Unless it gets widely crazy, I'm going to let them comment on what they think the evidence is, but you are the ultimate judges of it." (Defendant's attorney had earlier objected to how the prosecutor characterized the address listed on defendant's motor vehicle records admitted in evidence. The court admonished the jury at that time that the attorneys' comments were not evidence and instructed the jury to decide "what the evidence is based on what was presented in court.")

The prosecutor continued: "So … the instructions say neither side has to present all the evidence. What you have to understand is that this court proceeding has been overseen by a judge that lets you know what can and cannot be heard, tells you what instructions you are to follow, and there's a concept of law that talks about propensity and simply trying to convict somebody because they have been in that car before; so don't be misconstrued [*sic*] by that. What we do know is that on the date that it mattered

5

… [defendant] was in that car." Defense counsel objected that "the district attorney is making it sound like if he was in that car, that could have been presented, which is not shown." The court admonished counsel: "Don't argue about it anymore. Just don't argue the case. Go ahead and continue with the argument." The prosecutor continued: "So I'll close with this, the power of the subpoena is held by both parties and absolute[ly] the burden is with the People beyond a reasonable doubt to prove this case. I submit to you that the evidence has. The defense has no obligation to put on a defense, but they do have the power of a subpoena. That's right, just like a right to a trial, by all is to bring people [*sic*], present evidence, should they choose. Ladies and gentlemen, [the registered owner of the vehicle], the defense wants to challenge you as to what she would say, you should demand more, and you deserve more. The argument is that if there's anything that the relative of the defendant in this case, who lives at the same address, who's the registered owner of the very car that he was driving on the date of [the] incident had anything to say to you that would be helpful to prove the defense's case, you would have heard it."

We see no deceptive or reprehensible conduct on this record. The prosecutor's reference to propensity evidence was a fair response to defense counsel's argument noting the absence of evidence of defendant's use of the Prelude, including what car he used in the traffic violations that led to his license being suspended. The prosecutor referred to propensity evidence as a "concept in the law" to explain a theoretical basis for why evidence of previous driving was not relevant. The prosecutor did not refer to the property owner relating a specific act of driving the Prelude nor to the court disallowing evidence that defendant had left the registered owner's residence in the Prelude an hour before the officer spoke with the property owner. Nor do we see a reasonable likelihood of the jury arriving at that scenario. (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.) The prosecutor mentioned that the officer visited the registered owner's address only to note

6

that was where he developed a suspect and learned of a relationship based on a common surname.

Even if the prosecutor's comments had amounted to misconduct, we see no prejudice. The prosecutor urged the jurors to focus on the officer's credibility—his training, his ability to observe defendant, his not having a vested interest in closing the case, the familial relationship between defendant and the registered owner, defendant's connection to that address, and defendant's motive to flee. The jurors were instructed that "evidence" is the sworn testimony of witnesses and exhibits admitted in evidence, and that nothing the attorneys say is evidence, including their remarks in closing argument. (CALCRIM No. 222.) The trial court repeated the concept during the prosecutor's rebuttal. The prosecutor's argument did not violate defendant's enumerated constitutional rights, nor did it render the trial fundamentally unfair.

## B. IDENTIFICATION RELIABILITY

Defendant argues the trial court committed prejudicial error by allowing the officer to testify that he identified defendant by viewing his DMV photo. In defendant's view, the officer effectively engaged in an unduly suggestive single-photo showup, which buttressed an otherwise unreliable in-court identification of defendant in violation of due process.

In determining whether the admission of identification evidence violates due process, the California Supreme Court instructs us to consider "whether the identification procedure was unduly suggestive and unnecessary, and, if so, [] whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness' degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)

The United States Supreme Court in *Manson v. Brathwaite* (1977) 432 U.S. 98 (*Brathwaite*) addressed whether "pretrial identification evidence obtained by a police procedure that was both suggestive and unnecessary" compels exclusion under the Fourteenth Amendment Due Process Clause. (*Brathwaite,* at p. 99.) As in the case here, the pretrial identification in *Brathwaite* was made by a law enforcement officer. The officer in *Brathwaite* briefly encountered and purchased drugs from a man he did not know while working undercover. (*Id.* at p. 100.) The officer described the drug dealer to another officer, and based on that description the second officer obtained a photograph of a man he suspected might be the offender, and left the photograph on the undercover officer's desk. (*Id.* at p. 101.) Two days later, the undercover officer viewed the photo and then identified the man in the photo as the person who sold him the drugs. (*Ibid.*)

The Supreme Court considered the procedure employed by the officers to be suggestive (because only one photograph was used) and unnecessary (because there was no exigency). (*Brathwaite*, *supra*, 432 U.S. at p. 109.) But the court rejected a per se rule of exclusion grounded in due process. (*Id.* at pp. 109–113.) Instead it concluded that "reliability is the linchpin in determining the admissibility of [such] identification testimony," and it adopted a totality of the circumstances test to assess that reliability. (*Id.* at p. 114.) The court weighed "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation" against "the corrupting effect of the suggestive identification itself." (*Ibid.*)

The *Brathwaite* court recognized that "identifications arising from single-photograph displays may be viewed in general with suspicion," citing *Simmons v. United States* (1968) 390 U.S. 377. (*Brathwaite*, *supra*, 432 U.S. at p. 116.) In addressing whether "pretrial identification by means of photographs was in the circumstances so unnecessarily suggestive and conducive to misidentification as to deny [the defendant]

8

due process of law," the *Simmons* court recognized "that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals"; the danger of a misidentification "will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw"; and the witness "is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." (*Simmons*, at pp. 381, 383–384.) Despite such hazards, it saw no constitutional infirmary in the procedure. (*Id.* at p. 384.) The court in *Simmons* recognized that photographs have been used widely and effectively in law enforcement from the standpoint of both apprehending offenders and exonerating innocent suspects, and the danger of convictions based on misidentification may be substantially lessened by cross-examination. (*Ibid.*) It held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Ibid; accord Cunningham*, *supra*, 25 Cal.4th at p. 990 [no substantial likelihood of irreparable misidentification under totality of circumstances].)

In weighing the suggestibility and effects of the single photo procedure against reliability of the undercover officer's identification in *Brathwaite*, the court noted that the officer was within two feet of the offender for two to three minutes illuminated by natural light; he was "not a casual or passing observer" but a trained police officer "expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor"; and "his claimed observations would be subject later to close scrutiny and examination at any trial." (*Brathwaite*, *supra*, 432 U.S. at p. 115.) The officer provided a detailed description of the offender; no claim was made that Brathwaite did not possess the characteristics described; the officer viewed the photo two

days after the event; and he was certain the man in the photo was the man who sold him the drugs. (*Id.* at pp. 115–116.) Those indicators of reliability were not outweighed by the suggestive effect of the challenged process, where officer viewed the photo alone, in circumstances allowing for care and reflection, and without coercive pressure to make an identification arising from the presence of another. (*Id.* at p. 116.)

Here, an on-duty trained highway patrol officer witnessed a traffic offense at close proximity in daylight. The officer pursued the offender for several minutes, and on more than one occasion saw the offender's face. Within 30 minutes after observing the offender, the officer spoke with someone at the vehicle's registered address who related that defendant had "left in the car an hour ago." The officer returned to his office where he viewed a photograph of defendant uploaded from the state's motor vehicle department database, and he recognized defendant as the offender. As in *Brathwaite*, the officer's identification met the threshold of reliability. The officer viewed the suspect at several points during his pursuit. The officer was trained to notice details, his degree of attention was high, and the lapse of time between the offense and the identification was minimal. Any suggestibility from seeing defendant's photograph was also minimal. The officer viewed the photo alone, in circumstances allowing for care and reflection, and without coercive pressure to make an identification. To the extent the officer may have been mistaken, as defendant argues, defendant had the opportunity to pursue that full line of inquiry in cross-examination. (*Perry v. New Hampshire* (2012) 565 U.S. 228, 233 [in the absence of improper law enforcement activity, reliability is tested "through the rights and opportunities generally designed for that purpose," i.e., robust cross-examination, protective evidentiary rules, and jury instructions].)

## C. JURY INSTRUCTION ON IDENTIFICATION

The jury was instructed with CALCRIM No. 315 regarding eyewitness identification evidence. The standard instruction directs a jury evaluating identification testimony to consider several factors, including "[h]ow certain was the witness when he

or she made an identification?"[1]  Defendant argues that witness certainty is unrelated to accuracy, and that instructing on certainty therefore violated his due process rights under the state and federal constitutions by lessening the prosecution's burden of proof and impeding his ability to present a defense.  He acknowledges his failure to preserve the argument in the trial court, but argues that a request to modify the instruction would have been futile in light of *People v. Sanchez* (2016) 63 Cal.4th 411, 462, where the California Supreme Court found no error in instructing with CALJIC No. 2.92 (the predecessor to CALCRIM No. 315).  But *Sanchez* involved some certain and some uncertain identifications, and CALJIC No. 2.92 varied from CALCRIM No. 315 in that the former instructed the jury to consider " 'the extent to which the witness is either certain or uncertain of the identification.' " (*Sanchez*, at pp. 461–462.)  The *Sanchez* court acknowledged that some courts have disapproved instructing on certainty, and advised that "[a]ny reexamination of our previous holdings in light of developments in other jurisdictions should await a case involving only certain identifications." (*Id*. at p. 462.)  The present case meets that description.

Notwithstanding defendant's forfeiture, we elect to address the issue briefly in light of the Supreme Court's recent rejection of the same claims in *People v. Lemcke*

---

[1] The other inquiries are:  "Did the witness know or have contact with the defendant before the event? [¶]• How well could the witness see the perpetrator? [¶]• What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, [and] duration of observation[, and <insert any other relevant circumstances>]? [¶]• How closely was the witness paying attention? [¶]• Was the witness under stress when he or she made the observation? [¶]• Did the witness give a description and how does that description compare to the defendant? [¶]• How much time passed between the event and the time when the witness identified the defendant? [¶]• Was the witness asked to pick the perpetrator out of a group? [¶]• Did the witness ever fail to identify the defendant? [¶]• Did the witness ever change his or her mind about the identification? [¶ … ¶]• Are the witness and the defendant of different races? [¶]• [Was the witness able to identify other participants in the crime?] [¶]• [Was the witness able to identify the defendant in a photographic or physical lineup?]" (CALCRIM No. 315.)

(2021) 11 Cal.5th 644, which defendant concedes in supplemental briefing. The Supreme Court in *Lemcke* held that the eyewitness identification instruction did not operate to lower the prosecution's burden of proof, as it did not equate a witness's certainty with accuracy or suggest that an identification from an eyewitness who has expressed certainty is presumed to be accurate. (*Id*. at p. 657.) Witness certainty is only "one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in [the instruction]." (*Ibid*.) The court held that the instruction did not impede the ability to present a complete defense or otherwise violate due process. The instruction did not prevent the defendant from calling an expert in eyewitness identification or cross-examining the eyewitness and investigating officers regarding the identification. (*Id*. at pp. 660–661.) We are bound by the Supreme Court's decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## D. NO CUMULATIVE ERROR

We reject defendant's argument that the cumulative impact of trial court error deprived him of a fair trial under the federal Constitution. We find no trial court error and therefore no cumulative prejudice, and our examination of the entire record shows no miscarriage of justice (Cal. Const., art. VI, § 13) or due process violation.

## E. SENTENCING ISSUES

### 1. Penal Code Section 654

The probation report recommended the three-year upper term for count 1 and a concurrent two-year middle term for count 2 (in addition to the one-year prior prison term enhancement). The prosecutor joined in that four-year recommendation, viewing it as "the maximum" and "appropriate." The trial court sentenced defendant to concurrent

12

two-year terms, after commenting that "it was all basically one incident of chasing," plus the one-year enhancement.

Defendant argues that he committed both crimes for the sole purpose of avoiding arrest. The trial court therefore should have stayed punishment for count 2 (driving against traffic while evading a pursuing officer) under Penal Code section 654, which prohibits punishment "for more than one violation arising out of an 'act or omission' which is made punishable in different ways by different statutory provisions." (*People v. Beamon* (1973) 8 Cal.3d 625, 636.) Section 654 extends to multiple offenses committed during an indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) The defendant's intent and objective determine whether a course of conduct is indivisible. (*People v. Perez* (1979) 23 Cal.3d 545, 551.) If the offenses reflect a single objective, the court may punish the defendant for only one offense. (*People v. Harrison*, at p. 335.) "If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267–268.)

We apply the substantial evidence standard of review to determine whether defendant harbored a separate intent and objective for each offense (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414), mindful that by sentencing defendant to concurrent terms, the trial court implicitly found that counts 1 and 2 and their objectives were *not* predominantly independent of each other. (*Cf. People v. Osband* (1996) 13 Cal.4th 622, 730 [consecutive sentences reflect implicit determination of more than one objective].)

The Attorney General argues it is reasonable to infer defendant's separate intent to threaten the officer with his vehicle by driving against traffic, distinct from the other acts of reckless driving. An objective other than evading the officer is not shown on this record. The officer described a perceived threat to his life after defendant abruptly turned

13

around in front of him on an exit ramp, but the officer's state of mind does not necessarily reveal defendant's intent. Defendant did not aim for or charge the officer with his car, but "narrowly drove around" him and continued fleeing; the officer did not describe having to take evasive action. The Attorney General argues that driving against traffic elevates the danger faced by a motorcycle officer, rendering that conduct more culpable than reckless driving during a pursuit, citing *People v. Calderon* (2013) 214 Cal.App.4th 656, 669 [interpreting applicability of deadly weapon enhancement to carjacking where weapon used is the car itself].) We readily acknowledge that a car can be used in an intentionally threatening manner, but we find insufficient evidence of an independent intent to do so here. We will therefore exercise our authority to stay the unauthorized concurrent sentence. (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1441 [appellate court has authority to correct an unauthorized sentence on appeal]; *People v. Miller* (1977) 18 Cal.3d 873, 887–888 [staying execution of "merged" sentence violating Penal Code section 654].)

## 2. Statutory Changes to Penal Code Section 667.5(b)

The trial court imposed a one-year prior prison term enhancement under Penal Code section 667.5, former subdivision (b). At the time of sentencing, prior prison term enhancements applied to terms served for all felony convictions. (*Ibid.*) The Legislature has since limited prior prison term enhancements to prison terms served for sexually violent offenses. (Pen. Code, § 667.5, subd. (b); Stats. 2019, ch. 590, § 1 (S.B. 136) eff. Jan 1, 2020.) The amendment to Penal Code section 667.5, subdivision (b) applies retroactively because it is ameliorative and defendant's judgment was not final before the amendment's effective date. (*In re Estrada* (1965) 63 Cal.2d 740, 744–748; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342 [Sen. Bill No.136 applies retroactively to nonfinal judgments].) The parties agree the enhancement must be stricken. Defendant asks that we do so, while respondent argues the proper remedy is to remand the matter for

14

full resentencing to allow the trial court to exercise its sentencing discretion in light of the change in the law.

We are mindful of the trial court's full resentencing discretion (*People v. Navarro* (2007) 40 Cal.4th 668, 681), but on this record we see no exercise of further discretion by the trial court that would result in a restructured sentence greater than the three-year sentence defendant has now served. (Cf. *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [remand not required where the sentencing court clearly indicated that it would not have exercised newly recognized discretion to strike allegations under Three Strikes law].) At the time of sentencing, the maximum sentence defendant could have received was three years on count 1, plus the one-year enhancement, plus 364 days for the misdemeanor. The court exercised its discretion and imposed a two-year middle term on count 1, plus the one-year enhancement, and granted five days credit for time served for the misdemeanor. Even if the trial court were to resentence defendant to the upper three-year term on count 1, defendant has already served that time and we do not see the trial court imposing additional time on the misdemeanor when it declined initially to adopt the four-year sentence recommended by the probation department and the prosecution. We will therefore correct the unauthorized sentence on appeal in the interest of judicial efficiency. We will amend the judgment to strike the one-year prior prison term enhancement which no longer applies to defendant under Penal Code section 667.5, subdivision (b), as amended.

### III. DISPOSITION

The judgment is modified to stay the sentence for count 2 and to strike the one-year prior prison term enhancement imposed under Penal Code, former section 667.5, subdivision (b). As modified, the judgment is affirmed. The superior court clerk is directed to enter and transmit to the Department of Corrections and Rehabilitation a new order and abstract of judgment reflecting these modifications.

15

_____

Grover, J.

**WE CONCUR:**

_____

Elia, Acting P. J.

_____

Danner, J.

**H045860 -** *The People v. Gillean*